CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
Neha A. Christerna (Bar No. 245191)
(E-Mail: Neha_Christerna@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
CHRISTOPHER JOSEPH ANTOUN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 21-547-FLA |
|---|---|
| Plaintiff, | |
| v. | **DEFENDANT'S RESPONSE TO GOVERNMENT'S APPLICATION FOR REVIEW/ RECONSIDERATION OF ORDER SETTING CONDITIONS OF RELEASE** |
| CHRISTOPHER JOSEPH ANTOUN, | |
| Defendant. | |

Defendant Christopher Joseph Antoun by and through his attorney of record, Deputy Federal Public Defender Neha A. Christerna, hereby files his Response to Government's Application for Review/Reconsideration of Order Setting Conditions of Release.

                                                Respectfully submitted,
                                                CUAUHTEMOC ORTEGA
                                                Federal Public Defender

DATED: January 6, 2022         By  /s/ Neha A. Christerna
                                                NEHA A. CHRISTERNA
                                                Deputy Federal Public Defender
                                                Attorney for Christopher Joseph Antoun.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. THIS COURT SHOULD UPHOLD THE BOND PREVIOUSLY SET IN THIS MATTER

Defendant Christopher Joseph Antoun made his initially appearance on November 22, 2021 in front of United States Magistrate John E. McDermott. At the time of the detention hearing, pretrial was not able to contact potential sureties nor verify Mr. Antoun's background. The Court detained Mr. Antoun but indicated that counsel for Mr. Antoun could request a reconsideration if a surety could be confirmed and more information regarding Mr. Antoun could be provided. On December 15, 2021, Mr. Antoun filed a Motion for Review of Detention Order and Request for Bond (Docket #20). On December 20, 2021, the government filed an Opposition (Docket #22). On December 22, 2021, Judge McDermott, after carefully considering both parties' arguments, ordered Mr. Antoun released on bail with conditions that addressed risk of flight and danger to the community. Specifically, Judge McDermott ordered bond with the following conditions:

- A $15,000 appearance bond to be secured by an affidavit of surety;
- Submit to pretrial services supervision;
- Travel is restricted to the Central District of California and passports are to be surrendered to pretrial services;
- Reside as approved by pretrial services;
- Maintain or actively seek employment;
- Employment approved by pretrial service;
- Avoid contact with any known victims or witnesses;
- Do not possess any firearms, ammunition, destructive devices, or other dangerous weapons;
- Do not use alcohol;
- Do not possess any illegal drugs or state-authorized marijuana and submit to search conditions;

- Do not use any controlled substances;
- Submit to drug testing;
- Participate in Location Monitoring with a bracelet and be subject to a curfew;
- Participate in an in-patient, residential drug treatment program;
- Submit to a mental health evaluation;

(Docket # 21)

The government's application for reconsideration should be denied. As discussed below, Mr. Antoun is neither a flight risk or a danger to the community. Mr. Antoun has a stable residence to return to and willing to participate in drug treatment and mental health counseling. Mr. Antoun has no violence in his criminal history and does not have a history of possessing dangerous weapons. Mr. Antoun has never traveled internationally and has significant ties to the district. The strict conditions that the Court imposed ensure Mr. Antoun's appearance and safety to the community. This is not a presumption case and there is no mandatory minimum sentence at issue.

## II.   ARGUMENT

### A. Legal Standard

The Bail Reform Act of 1984 "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). The Act is intended to authorize pretrial detention "only in rare circumstances," and "doubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* The presumption under the Act is that there is no detention hearing, and that a defendant should be released on personal recognizance or unsecured appearance bond. 18 U.S.C. § 3142(a), (b). The plain language of the Act also makes clear that a detention hearing is not a routine event that the government is entitled to simply for the asking. Rather, a detention hearing, which is provided for at subsection (f) of the statute, is appropriate only in certain, limited circumstances. 18 U.S.C. § 3142(f).

There is no presumption that is evoked in this matter. Thus, the government bears the burden of demonstrating a serious risk of flight by a preponderance of the evidence, and danger to the community must be shown by the government by clear and convincing evidence. *Motamedi*, 767 F.2d 1406, *see also United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The conditions that the Court has set offset any concerns over flight risk and danger to the community.

When the government fails to meet its burden, as in this case, the Act mandates the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community. *Motamedi*, 767 F.2d at 1405 (emphasis added); *see also* 18 U.S.C. § 3142(c)(1)(B). Finally, constitutional concerns animate the presumptions in favor of granting bail in this matter. As now-Justice Kennedy stated in analyzing the proper standard of review for orders of detention, "The Fifth and Eighth Amendments' prohibitions of deprivation of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the statutory mandate has been respected." *Motamedi*, 767 F.2d at 1405. These constitutional concerns mean that "[o]nly in rare circumstances should release be denied" and all "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id*.

B. The Court's Restrictive Bail Conditions Offset Danger

The government's main focus is arguing that Mr. Antoun is a danger. All the information that the government has provided was argued to Judge McDermott on two occasions, at the first detention hearing, and through written submissions. Judge McDermott considered all the facts, including the specific facts of the offense, and set bail and therefore, the government cannot meet its burden by clear and convincing evidence that Mr. Antoun *now* presents a danger to the community.

Clear and convincing evidence means proof that the particular defendant actually poses a threat to the community, and not that a defendant in theory poses a danger. *United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991). Only when there is a

4

"strong possibility that a person will commit additional crimes if released" is the community interest in safety sufficiently compelling to overcome the criminal defendant's right to liberty. *United States v. Ploof*, 851 F.2d 7, 11-12 (1st Cir. 1988). Even the mere fact that a defendant is charged with a crime of violence will not alone satisfy the clear and convincing evidence standard. *See Chimurenga*, 760 F.2d at 405.

Judge McDermott set a number of restrictive conditions that offset the risk of danger in this matter. Among the conditions, the Court imposed location monitoring with a curfew where Mr. Antoun will be monitored 24 hours a day, every day. Pretrial would be notified immediately if Mr. Antoun was in an area he is not supposed to be in, and if the equipment was tampered with. Moreover, the Court ordered Mr. Antoun not to contact any alleged victims in the matter. Mr. Antoun no longer operates his student loan consulting business, so the public is further protected.

In addition, Mr. Antoun will be addressing his substance abuse issues and mental health which also offsets danger. Mr. Antoun will be attending a restrictive residential drug treatment program. Court ordered residential drug treatment facilities have strict rules that all participants must abide by. The first 30 days of treatment will most likely consist of a "lock-down" period, whereby Mr. Antoun will not be allowed to leave the facility, make phone calls, or have visitors. He can only graduate from the program if he adheres by the strict rules and sincerely addresses his drug issues.

In their request for review, the government relies heavily on the alleged facts of the offense. Despite the serious allegations of the instant offense, Mr. Antoun does not present a danger to the community. First, a review of his prior criminal convictions shows that he has been cited only for vehicle offenses and possession of drugs or paraphernalia. Absent from his criminal history is any violence or crimes involving any victims.

The government acknowledges that the weight of the evidence is the least important factor for the Court to consider. (Docket #21, Government's application p. 7). Although Mr. Antoun made a statement admitting to the communications to the

5

SBA, it is important to note that Mr. Antoun indicated to law enforcement that he had no intention of carrying out the threats. He further stated that he was under the influence of drugs and alcohol when the threats were made. Mr. Antoun used his true name in the emails he sent and made no attempts to conceal his identity. Additionally, he has never owned a firearm, explosives of dangerous weapons and has zero experience with them. When law enforcement conducted a search Mr. Antoun's residence, there were no dangerous weapons found.

      A. <u>Mr. Antoun is Not a Flight Risk</u>

The government argues that Mr. Antoun remains a flight risk based on three factors, all of which can be addressed through the release conditions that the Court has imposed. First, the government argues that Mr. Antoun has a conviction for failing to appear on a misdemeanor offense. Mr. Antoun's failing to appear stems from having to move out of state. Since it was a misdemeanor offense, it was unlikely he was facing serious custody time. And notably, Mr. Antoun priors do not include any allegations of violence. Instead, they consist of non-violent drug related and driving offenses. Second, the government points to the fact that Mr. Antoun has no assets or employment income. A defendant is not required to have assets under the Bail Reform Act and it does not indicate a flight risk. Instead it indicates the opposite. Mr. Antoun does not have the means to flee. What is relevant is whether the surety has assets. In this case, Mr. Antoun's father is gainfully employed as a contractor and would stand to lose a significant amount of money if Mr. Antoun was to violate a release condition. Moreover, the Court has ordered a condition that Mr. Antoun maintain or actively seek employment. Third, the government points to Mr. Antoun's drug use as contributing to a risk of flight. As indicated above, Mr. Antoun will be released to a residential drug treatment facility.

//

//

//

### III.   CONCLUSION

For the foregoing reasons, the defense respectfully requests that this Court deny the government's Application for Review/Reconsideration of Order Granting Bail.

                                          Respectfully submitted,

                                          CUAUHTEMOC ORTEGA
                                          Federal Public Defender

DATED: January 6, 2022          By   */s/ Neha A. Christerna*
                                          NEHA A. CHRISTERNA
                                          Deputy Federal Public Defender
                                          Attorney for Christopher Joseph Antoun