TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0304
     Facsimile: (213) 894-0141
     E-mail:    Juan.Rodriguez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-547-FLA |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT CHRISTOPHER JOSEPH ANTOUN |
| v. | |
| CHRISTOPHER JOSEPH ANTOUN, | Hearing Date: May 27, 2022 Hearing Time: 11:00 a.m. |
| Defendant. | Location:   Courtroom of the Hon. Fernando L. Aenlle-Rocha |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Juan M. Rodriguez, hereby files its sentencing position for Christopher Joseph Antoun.

//
//
//
//
//
//

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report, and such further evidence and argument as the Court may permit.

Dated: May 13, 2022                    Respectfully submitted,

                                       TRACY L. WILKISON
                                       United States Attorney

                                       SCOTT M. GARRINGER
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                       _____/s/_____
                                       JUAN M. RODRIGUEZ
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

ii

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.   INTRODUCTION**

3        In May of 2020 and November of 2021, defendant Christopher

4   Joseph Antoun ("defendant") emailed United States Small Business

5   Administration ("SBA") employees threatening to "start bombing every

6   location" owned by the SBA and threatening to "beat[] the skulls" of

7   such employees with a bat.  For his conduct, defendant was charged

8   with, and pleaded guilty to, Threats by Interstate Communication, in

9   violation of 18 U.S.C. § 875(c).

10       The government agrees with the Probation Office that defendant's

11  Criminal History Category is I, that his total offense level is 12,

12  and the applicable Guidelines range is 10 to 16 months' imprisonment.

13       For the reasons set forth below, and consistent with the

14  government's obligations in the plea agreement, the government

15  recommends that the Court sentence defendant to a term of

16  imprisonment at the low-end of the Guidelines range--10 months'

17  imprisonment--followed by three years of supervised release, with the

18  terms recommended by the Probation Office as well as the terms agreed

19  to by the parties in the plea agreement, and a $100 special

20  assessment.

21  **II.  FACTUAL BACKGROUND**

22       On May 3, 2020, defendant, with intent to issue a threat, and

23  with knowledge that it would be viewed as a threat, knowingly

24  transmitted in interstate commerce an electronic communication that

25  contained a true threat to injure the person of another, namely, SBA

26  employees.  (Dkt. 37 (Presentence Investigation Report ("PSR")),

27  ¶ 10; Dkt. 31 ("Plea Agreement"), ¶ 9.)  Specifically, defendant sent

28  an email to the SBA threatening to "start bombing every location"

1

owned by the SBA.  At the time defendant made this threat, defendant intended to threaten the employees of the SBA and knew that such language would be perceived as a true threat.  (Id.)

Law enforcement advised defendant that further threats to the SBA would result in prosecution, but defendant continued to send threatening emails to employees of the SBA.  (PSR ¶ 12; Plea Agreement ¶ 9.)  On November 12, 2021, defendant again, with intent to issue a threat, and with knowledge that it would be viewed as a threat, knowingly transmitted in interstate commerce an electronic communication that contained a true threat to injure the employees of the SBA. (PSR ¶ 17; Plea Agreement ¶ 9.)

Lastly, on November 17, 2021, defendant, with intent to issue a threat, and with knowledge that it would be viewed as a threat, again knowingly transmitted in interstate commerce an electronic communication threatening to injure SBA employees by "beating the skulls" of such employees with a bat.  At the time defendant made this threat, defendant intended to threaten the employees of the SBA and knew that such language would be perceived as a true threat. (PSR ¶ 18; Plea Agreement ¶ 9.)

III. **GUIDELINES CALCULATION**

The Probation Office calculated a base offense level of 12, pursuant to U.S.S.G. § 2A6.1, as well as a two-level enhancement, pursuant to U.S.S.G. § 2A6.1(b)(2)(A), because defendant's offense involved more than two threats.  (PSR ¶¶ 28-31.)  Defendant has accepted responsibility and thus a two-level downward adjustment for his acceptance is appropriate, bringing defendant's total offense level to 12.  (Id. ¶¶ 37-38.)

The government agrees with the Probation Office that defendant has one criminal history point, placing defendant in Criminal History Category I.  (Id. ¶¶ 42-43.)  Based on a total offense level of 12 and a Criminal History Category of I, defendant's applicable Guidelines range is 10 to 16 months' imprisonment.

## IV.  THE GOVERNMENT'S SENTENCING RECOMMENDATION

In light of the mitigating factors in this case, and consistent with its obligations in the plea agreement, the government recommends the following sentence: (1) a term of imprisonment at the low-end of the Guidelines range, namely 10 months, (2) a three-year period of supervised release with the terms recommended by the Probation Office and agreed to by the parties (Plea Agreement ¶ 2h), and (3) a $100 special assessment.  Such a sentence appropriately balances the history and characteristics of the defendant with the need to reflect the seriousness of the offense, protect the public, deter defendant from further criminal acts, and promote respect for the law.

### A.   Nature and Circumstances of the Offense

The nature and circumstances of defendant's offense support a low-end sentence of 10 months' imprisonment.  See 18 U.S.C. § 3553(a)(1).  There was no evidence that defendant acted on his threats, committed any violence, or took any preparatory steps to plan for an act of violence.  Defendant did make multiple threats intending for the threats to be taken seriously and used menacing language.  (Plea Agreement ¶ 9; PSR ¶¶ 10, 11, 16, 18.)  However, the Guidelines, through a two-level enhancement, already account for the multiple threats.  Accordingly, on balance, the serious nature of the offense and the mitigating circumstances support the government's recommended low-end custodial sentence of 10 months.

**B.   History and Characteristics of Defendant**

Defendant's personal history and characteristics contain several mitigating facts that counsel in favor of a sentence at the low-end of the Guidelines range.  Defendant is a non-violent offender with minimal criminal history who has accepted responsibility, as reflected in his Guidelines calculation. (PSR ¶¶ 28-38, 40-47.)  As set forth in the PSR, defendant did not see his father until the age of 22 and although his mother was present, she never spent much time with him.  (Id. ¶¶ 52-53.)  Defendant also reported that he experienced physical and mental abuse growing up, which led to drug use, which in turn led to his mother evicting him from their home. (Id. ¶ 57.)  These mitigating facts in defendant's personal history and characteristics support a low-end Guidelines sentence of 10 months.

**C.   Need to Reflect Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Deterrence, and Protect the Public**

Finally, a low-end Guidelines sentence is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public.

The government anticipates that defendant will seek a sentence below the Guidelines, which would not be appropriate here.  Although defendant has minimal criminal history, the Guidelines already account for this by placing defendant in Criminal History Category I. Defendant's conduct was serious.  He was warned that his conduct could result in prosecution and he disregarded the warning; a custodial sentence is warranted.  A custodial sentence of 10 months

is necessary to deter defendant and others from similar conduct and to promote respect for the law and protect the public.

A sentence at the low-end of the Guidelines range will also prevent unwarranted sentencing disparities between this defendant and similarly situated defendants.  See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010), overruled on other grounds by United States v. Miller, 953 F.3d 1095 (9th Cir. 2020) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity[.]'"); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").  Accordingly, the government submits that, on balance, these factors weigh in favor of a sentence at the low-end of the Guidelines range.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court impose the following sentence: (1) a term of imprisonment of 10 months, (2) a three-year period of supervised release with the terms recommended by the Probation Office and agreed to by the parties (Plea Agreement ¶ 2h), and (3) a $100 special assessment.